UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

LEONARDO GABRIEL,

                   Defendant.

------------------------------------X

S1 08 Cr. 848-01 (RWS)

11 Cr. 225-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

        On October 30, 2009, Leonardo Gabriel ("Gabriel" or "Defendant") pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, 50 grams and more of crack cocaine, and 1 kilograms and more of heroin, in violation of 21 U.S.C §§ 841(b)(1)(A), 846, 851. On May 25, 2011, Gabriel pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C §§ 841(b)(1)(B) & 846.

        For the reasons set forth below, Gabriel will be sentenced to 240 months' imprisonment to be followed by 10 years' supervised release. Defendant will forfeit to the United

States all property involved in the offenses or traceable to them.  Gabriel will also be required to pay a special assessment of $200.

## Prior Proceedings

On September 9, 2008, Information S1 08 Cr. 848 (RWS) was filed in the Southern District of New York.

Count 1 charges that from October 1999 until April 2008, in the Southern District of New York and elsewhere, Gabriel, a/k/a "Kendry Hernandez," a/k/a "Chique," and others known and unknown, conspired to distribute and possess with intent to distribute 5 kilograms and more of cocaine; 50 grams and more of crack cocaine, and 1 kilograms and more of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846.

Prior Felony Information 08 Cr. 848 was filed on October 3, 2009, subjecting Gabriel to the enhanced penalties of 21 U.S.C. §§ 841(b)(1)(A) & 851.

On October 30, 2009, Gabriel appeared before the Honorable Robert W. Sweet in the Southern District of New York and pleaded guilty to Count 1 of Superseding Information S1 08

Cr. 848 (RWS).


On March 11, 2011, Information 11 Cr. 225 (RWS) was filed in the Southern District of New York.


Count 1 charges that from 2007 until September 3, 2010, in the Southern District of New York and elsewhere, LEONARDO GABRIEL, a/k/a "Chicki Ricki," and others known and unknown, conspired to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) & 846.


On May 25, 2011, Gabriel appeared before the Honorable Judge Kevin N. Fox in the Southern District of New York and allocuted to Count 1 of Information 11 Cr. 225 (RWS) in accordance with a plea agreement.


The plea agreement contains the following stipulations:


A.   Offense Level

Pursuant to § 2D.1.1(5), the defendant's base offense level is 30 because the defendant is responsible for at least 3.5 kilograms but less than 5 kilograms of cocaine in connection with his participation in the conspiracy charged in Count 1 of the Information.

Assuming the defendant clearly demonstrates acceptance of

responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 27.

B.   Criminal History

Based upon the information now available to the U.S. Attorney's Office (including representations by the defense), the defendant has six criminal history points, and is therefore in Criminal History Category III.

C.   Sentencing Range

Based upon the calculations set forth above, the defendant's advisory Guidelines range is 87 to 108 months' imprisonment (the "Stipulated Guidelines Range"), and the defendant is subject to a mandatory minimum term of imprisonment of 60 months. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to § 5E1.2. At offense level 27, the applicable Guidelines fine range is $12,500 to $2,000,000.


Gabriel's sentencing is currently scheduled for March 20, 2012.

4

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.   Thus, the sentence to be imposed here is the result of a consideration of:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed —

      (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)   the kinds of sentences available;

   (4)   the kinds of sentence and the sentencing range established for —

      (A)   the applicable category of offense committed

> by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.


**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Gabriel's personal and family history.


**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set

forth in that report.

## S1 08 CR 848(RWS)

The information that follows is based on an investigation conducted by a special agent with the United States Drug Enforcement Administration ("DEA").

In May 2007, the case agent and other federal agents received information from a government cooperating witness (the "CW"), about a narcotics-trafficking organization involved in transporting multiple kilograms of cocaine and heroin in the Bronx headed by a co-conspirator not named as a defendant herein ("CC-1"). Based on information provided by the CW, the DEA obtained judicial authorization to intercept communications occurring over multiple telephones used by CC-1 (the "CC-1 Wiretaps"). The DEA also obtained judicial authorization to search two apartments in the Bronx, New York, from where CC-1 operated his narcotics-trafficking business. Pursuant to the search warrants, DEA agents found drugs (cocaine) and drug paraphernalia (packaging materials and cutting agents), as well as a drug ledger.

The CC-1 Wiretaps identified a co-conspirator not named as a defendant herein ("CC-2") to be a significant supplier of cocaine to CC-1's organization and to operate in Manhattan and the Bronx. Based in part on evidence gathered over the CC-1 Wiretaps, the DEA obtained judicial authorization to intercept communications occurring over a telephone used by CC-2 ("CC-2") (the "CC-2 Wiretaps"). Pursuant to the CC-2 Wiretaps, on August 9, 2007, the case agent and other federal agents began intercepting communications between, among others, CC-2 and Gabriel. These communications revealed that Gabriel is a significant cocaine supplier of CC-2. The following are examples of some of the calls intercepted over the CC-2 Wiretaps:

a. On August 10, 2007, at approximately 7:10 p.m., CC-2 made an outgoing call to the Nextel Push-To-Talk line associated with telephone number 646-257-8199, and spoke with a man later identified as Gabriel. During the conversation, CC-2 told Gabriel, "I have ten pesos from the other thing. I told you I was going to do that slow. There's ten pesos if you want it, or tomorrow or Sunday I'll give you everything. What do you think?" Gabriel responded, "I will call you if anything because I'm already

home and this guy . . . . We will get it tomorrow." CC-2 then said, "Okay, I will have it tomorrow. I have around 300 to 400 left. Call me if anything. If anything appears." Based on the case agent's training and experience, and my review of other intercepted calls, the case agent believed that, when CC-2 was telling Gabriel that he had "ten pesos" and that he had "300 to 400 left," CC-2 was telling Gabriel that he had collected $10,000 to pay Gabriel for drugs, and CC-2 was still waiting to sell 300-400 grams of cocaine. The case agent also believed that CC-2 was asking Gabriel if he (Gabriel) wanted the $10,000 now, or if he wanted to wait until "tomorrow or Sunday" when CC-2 would have all the money.

b. On August 11, 2007, at approximately 12:59 p.m., CC-2 made an outgoing call to the Nextel Push-To-Talk line associated with telephone number 646-257-8199, and spoke to Gabriel. In this call, Gabriel stated, "some people called me, but that thing is not mine. In this situation I'm just a middle man. There is something beautiful around but the minimum I can give it away for is with the five because they are giving it to me with the four and a half. To see if we can at least make a little something for the rent.

9

It's something really nice." CC-2 then told Gabriel that he (CC-2) would call Gabriel back, to which Gabriel replied, "Call me right away because it is not much and I need to know what I should reserve." Based on the case agent's training, experience, and review of other calls, the case agent believed that, during this call, Gabriel was telling CC-2 that he had a new shipment of cocaine (which Gabriel described as "something beautiful"), and that, in referencing "five" and "four and a half," Gabriel was telling CC-2 that he can sell the cocaine to CC-2 for $25,000 per kilogram because Gabriel had gotten the cocaine for $24,500 per kilogram. (Based on the agent's training and experience, these prices correspond with the typical street value of cocaine at the time of this call.)

In subsequent calls intercepted pursuant to the CC-2 Wiretaps on August 11, 2007, CC-2 told an unidentified co-conspirator not named as a defendant herein that "Chique" had just been arrested at 180th Street. The case agent reviewed law enforcement records of all arrests in the vicinity of 180th Street in the Bronx, New York, on August 11, 2007. One of the two individuals arrested on that day in that area by the New York City Police Department was Gabriel who was arrested at

179th Street near Broadway in the Bronx, New York, for distributing cocaine. The case agent spoke with the officer who was involved in Gabriel's arrest ("Officer-1") and Officer-1 told the agent that at the time of the arrests the police recovered (among other things) two cellular phones from Gabriel.

On February 11, 2008, the DEA obtained judicial authorization to search the two cellular phones obtained from Gabriel by the New York City Police Department during the arrest. Pursuant to the search warrant, the case agent searched the cellular phones and determined that one of the phones had the number 646-257-8199, which is the same number used by CC-2 to call Gabriel in the calls described above.

According to the government, Gabriel is responsible for the distribution of the following: (1) 760 kilograms of cocaine; (2) 2,170 kilograms of crack cocaine; and (3) 20 kilograms of heroin.

**11 CR 225(RWS)**

The information that follows is based on an investigation conducted by a special agent with the Federal Bureau of Investigations ("FBI").

From the case agent's participation in this investigation, the agent know that since approximately 2007, the FBI had been investigating Gabriel in connection with suspected trafficking of cocaine in and around the New York City area and Connecticut.

In 2007, an individual was arrested in another federal district while in possession of approximately 4.5 kilograms of cocaine ("CW-1"). From, among other things, reviewing reports prepared by other agents, the case agent knew that CW-1 told law enforcement that the source of the cocaine was an individual CW-1 knew as "Chicki Ricki."

During the investigation, the case agent showed CW-1 a photograph of an individual the case agent knew to be Gabriel. CW-1 identified the individual in that photograph as "Chicki Ricki."

12

In June 2010, at the direction of FBI agents, CW-1 called Gabriel via "Push-to-Talk," ("PTT") at a certain cellular telephone ("Chicki Ricki's Phone"). The case agent consensually monitored and recorded the PTT call.   The conversation was in Spanish, and the agent is fluent in Spanish.   From listening to the conversation and reviewing a recording of it, the case agent knew that Gabriel offered CW-1 four kilograms of cocaine. During that call, CW-1 asked Gabriel, "So you have four left?" Gabriel responded, "Uh huh.  Only four."

In June 2010, CW-1, at the direction of the FBI, called Gabriel via PTT, on Chicki Ricki's Phone to arrange a meeting at a location in the Bronx, New York (the "Location") during which CW-1 would obtain the cocaine.   The case agent and other agents established surveillance at the Location.   From speaking with other law enforcement agents who conducted surveillance with the case agent and from speaking with CW-1, the case agent knew that, while CW-1 was at the Location, another co-conspirator not identified herein ("CC-1") drove to the Location and provided, from CC-1's car, 4 brick-like objects that appeared to be approximately one kilogram of cocaine.   The substance in one of the bricks field-tested positive for the presence of cocaine.

13

## The Relevant Statutory Provisions

For Count 1 of S1 08 Cr. 848, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, & 851, the mandatory minimum term of imprisonment is 20 years and the maximum term of imprisonment is life. For Count 1 of 11 Cr. 225, pursuant to 21 U.S.C. §§ 841(b)(1)(B) & 846, the mandatory minimum term of imprisonment is 5 years and the maximum term of imprisonment is 40 years.

For Count 1 of S1 08 Cr. 848, if a term of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, & 851, a term of at least 10 years' supervised release is required. For Count 1 of 11 Cr. 225, pursuant to 21 U.S.C. §§ 841(b)(1)(B) & 846, a term of at least 4 years' supervised release is required. Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Count 1 of S1 08 Cr. 848, the Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C.

14

§§ 841(b)(1)(A), 846, & 851.   For Count 1 of 11 Cr. 225, the Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. §§ 841(b)(1)(B) & 846.

For Count 1 of S1 08 Cr. 848, the maximum fine that may be imposed is the $8,000,000, pursuant to 21 U.S.C. § 841(b)(1)(A).   For Count 1 of 11 Cr. 225, the maximum fine that may be imposed is the $2,000,000, pursuant to 21 U.S.C. § 841(b)(1)(B).   A special assessment of $100 per count, for a total of $200, is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), & (a)(3), as a result of committing the offenses alleged in Count 1 of S1 08 CR 848 and Count 1 of 11 CR 225, forfeiture to the U.S. of all property real and personal involved in the offense or traceable to such property is required.

**The Guidelines**

The November 1, 2011 edition of the United States Sentencing Commission Guidelines Manual has been used in this

15

case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Count 1 of S1 08 CR 848 and Count 1 of 11 CR 225 are grouped together pursuant to § 3D1.2(d), which provides that when the offense level is determined largely on the basis of the quantity of a substance involved. The guideline for a violation of 21 U.S.C. § 841(b)(1)(A) is found in § 2D1.1. According to the Offense Conduct section, the Defendant's criminal activity involved a conspiracy to distribute 760 kilograms of cocaine, 2,170 kilograms of cocaine base, 20 kilograms of heroin, and at least 3.5 kilograms of cocaine. Based on the Drug Equivalency Table, 760 kilograms of cocaine is equivalent to 152,000 kilograms of marijuana; 2,170 kilograms of cocaine base is equivalent to 7,749,070 kilograms of marijuana; 20 kilograms of heroin is equivalent to 20,000 kilograms of marijuana; and 3.5 kilograms of cocaine is equivalent to 700 kilograms of marijuana. All of the illicit substances combined equal a total marijuana equivalency weight of 7,921,770 kilograms. The offense level specified in the Drug Quantity Table set out in § 2D1.1(c)(1), sets a base offense level of 38.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 35.

On August 8, 1997, Gabriel was arrested and charged with one count of criminal possession of a controlled substance in the second degree and one count of criminal possession of a weapon in the third degree. On February 24, 1998, Defendant was sentenced in the New York County Supreme Court to 3 years' to life imprisonment and license suspended for 6 months on Count 1 and 1 year's imprisonment on Count 2. On October 1, 1998, Gabriel was paroled for life. On June 10, 2002, Gabriel was discharged from parole via Board action. Pursuant to § 4A1.1(a) and § 4A1.2(e)(1), this conviction warrants three criminal history points.

17

The criminal conviction above results in a subtotal criminal history score of three.

At the time the instant offense was committed, Gabriel was under parole supervision.    Pursuant  to  §  4A1.1(d),  two criminal history points are therefore added.

A total of five criminal history points establishes a Criminal  History  Category  of  III,  pursuant  to  the  table  at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 35 and a Criminal History Category of III, the Guidelines range for imprisonment is 210 to 262 months, restricted to 240 to 262 months pursuant to § 5G1.1(c)(2).

For Count 1 of S1 08 Cr. 848, the Guidelines range for a term of supervised release is ten years, the minimum required by statute, pursuant to § 5D1.2(c).   For Count 1 of 11 Cr. 225, the Guidelines range for a term of supervised release is four years, pursuant to § 5D1.2(c).

Defendant is not eligible for probation on either count because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $20,000 to $10 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.4, forfeiture is to be imposed upon a convicted defendant as provided by statute.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court

19

also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is concluded that the imposition of a Guidelines sentence is warranted.

## The Sentence

For the instant offense, Gabriel will be sentenced to 240 months' imprisonment and 10 years' supervised release.

Gabriel is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release.  It is recommended that Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, Cartagena shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug testing within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)  Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2)  Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of

21

the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

As a result of committing the offenses alleged in Count 1 of Information S1 08 Cr. 848 and Count 1 of Information 11 Cr. 225, Defendant shall forfeit to the United States, all property real and personal involved in the offenses or traceable to such property.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 20, 2012.


It is so ordered.


New York, NY
March    /5  2012

ROBERT W. SWEET
U.S.D.J.